IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARKEEM BROASTER,<br><br>Petitioner,<br><br>v.<br><br>SUPERINTENDENT SCI HOUTZDALE, THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA, SETH WILLIAMS, and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, THOMAS CORBETT,<br><br>Respondents. | CIVIL ACTION<br><br>NO. 10-3591 |

DuBOIS, J.                                                                                                            August 4, 2011

### MEMORANDUM

### I. INTRODUCTION

This case arises out of petitioner Larkeem Broaster's April 4, 2003 conviction in state court for third-degree murder and possession of an instrument of crime. Petitioner was sentenced on May 13, 2003 to concurrent terms of ten to twenty years imprisonment.

Petitioner filed a counseled Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 on July 22, 2010. On February 25, 2011, United States Magistrate Judge Carol Sandra Moore Wells submitted a Report and Recommendation ("R & R") to the Court, recommending that all of petitioner's habeas claims be denied without an evidentiary hearing.

Petitioner filed Objections to the R & R on April 15, 2011. For the reasons that follow, the Objections to the R & R are overruled in part and sustained in part; the R & R is approved in

1

part and rejected in part, as modified in this Memorandum; and the Court conditionally grants the Petition for Writ of Habeas Corpus on the ground that counsel was ineffective for failing to object to the state court's improper instructions about the inferences the jury could draw from petitioner's possession—three months after the murder—of a different handgun of the same caliber as the murder weapon. The Petition is denied in all other respects.

## II. BACKGROUND AND LEGAL STANDARD

The facts of this case and the applicable legal standard are set forth in detail in the R & R. The Court will not repeat them in this Memorandum except as is necessary to explain its rulings on petitioner's Objections to the R & R.

## III. DISCUSSION

Petitioner's habeas petition raises three claims of ineffective assistance of counsel based on counsel's failure to object to: (1) the court's jury instructions, which did not provide specific guidance as to "the factors that impeached the credibility of witness Orlando O'Neal" (Ground One); (2) that part of the court's jury instructions which allowed the jury to draw constitutionally impermissible inferences from petitioner's possession—three months after the murder—of a different handgun of the same caliber as the murder weapon (Ground Two); and (3) that part of the court's concluding instructions which described petitioner's exercise of his Fifth Amendment right as a "failure" to testify (Ground Three). The R & R recommends that the Court deny all of petitioner's habeas claims without an evidentiary hearing.

In the Objections to the R & R petitioner withdraws Ground Three of the habeas petition and objects to the R & R's analysis and conclusions as to Grounds One and Two of the petition. Ground Three of the habeas petition will be marked withdrawn. The remainder of this

2

Memorandum addresses only Grounds One and Two.

### A. Ground One: Ineffective Assistance of Counsel for Failing to Object to the Lack of a Jury Instruction That Would Specifically Address Witness Orlando O'Neal's Credibility in Light of His Pending Robbery Charge at the Time He Made Inculpatory Statements Against Petitioner

In Ground One, petitioner asserts that counsel was ineffective for failing to object to the court's jury instructions, which did not provide specific guidance as to "the factors that impeached the credibility of witness Orlando O'Neal." O'Neal was the only eyewitness who testified at trial. O'Neal testified that he saw petitioner use a gun to shoot and kill the victim, Kenneth Kemp, on May 31, 2001. When he initially approached investigators on March 13, 2002—nearly ten months after the murder—and identified petitioner as the murderer, there was an outstanding warrant for his arrest based on an unrelated robbery charge. (Trial Tr. Mar. 28, 2003 at 101-03.) By the time he testified at petitioner's trial, O'Neal had pleaded guilty to the robbery charge, had been sentenced to six to twenty-three months imprisonment, and was serving his sentence for the robbery conviction. (Id. at 115-17.)

At trial, counsel for both the Commonwealth and petitioner extensively questioned O'Neal about his criminal record and his motives for identifying petitioner as the murderer. O'Neal testified that he went to the police and identified petitioner as the person who killed Kemp because he hoped prosecutors would exercise leniency upon him during his own trial for robbery. (Trial Tr. Mar. 28, 2003 at 103, 163.) That testimony was contrary to O'Neal's testimony at the preliminary hearing, at which he stated he went to the police because he thought it was the "[r]ight thing to do." (Id. at 163-66.) Defense counsel cross-examined him on that contradiction. (Id.)

With respect to his criminal record, O'Neal admitted at trial that at the time he

3

approached the police with information about petitioner, he had been charged with robbery—his fifth major arrest for a crime. (Id. at 155-63, 168.) By the time of the trial, he had been convicted and sentenced and was eligible for parole, and he so testified. (Id. at 170.) In answering the prosecutor's questions, he also said that the police never promised him anything in return for his statement against petitioner; that no deals or promises were ever made as to the sentence he might face for the robbery conviction should he cooperate with the government in its case against petitioner; and that no promises had been made that he would be released from jail in return for his testimony. (Id. at 115-16.)

In charging the jury, the court stated that a factor the jury "should consider when judging credibility and deciding whether or not to believe testimony" is whether the witness "ha[s] an interest in the outcome of the case, bias, prejudice or other motive that might affect his or her testimony." (Trial Tr. Apr. 2, 2003 at 147-48.) This jury instruction, combined with the extensive questioning of O'Neal by defense counsel and the prosecutor regarding both the robbery charge and his motives for identifying petitioner as the murderer, brought into sharp focus the issue of O'Neal's credibility.

Petitioner argues that counsel should have requested an additional instruction to expressly inform the jury that, in assessing O'Neal's credibility, it could consider the fact that, at the time O'Neal reported to police that he saw petitioner murder Kemp, a robbery charge was pending against him. Petitioner argues that the fact that O'Neal had pleaded guilty to the robbery charge and had been sentenced by the time he testified at petitioner's trial "is not dispositive . . . because it is the status of the case when the police are first approached and when the [inculpatory] statement is made which is of import." (Pet'r's Obj. at 9.) Petitioner's claim of error thus

4

focuses not on the fact that O'Neal had been convicted of robbery by the time of petitioner's trial, but on the fact that, at the time he approached police to incriminate petitioner, O'Neal himself faced an open robbery charge.

In support of this argument that such an instruction was required, petitioner cites <u>Davis v. Alaska</u>, 415 U.S. 308 (1974). The Court rejects that argument. In <u>Davis</u>, the Supreme Court held only that defense counsel should have been permitted to cross-examine a witness about his probationary status in order to expose his potential motives for testifying against the defendant. <u>See</u> <u>id.</u> at 317-18. The Court in <u>Davis</u> did not hold that, in addition to such cross-examination, the court was required to specifically instruct the jury to consider the witness's probationary status when assessing his credibility.

During closing arguments at petitioner's trial, defense counsel stated: "We already know what the interest of Mr. O'Neal was in this case. This was his ticket out of jail. This was his hope for redemption by being a cooperative person ten months later." (Trial Tr. Apr. 2, 2003 at 25.) In commenting on what was said by defense counsel in argument, petitioner states in his Objections to the R & R that it is "wrong to elevate defense counsel's summation over [the court's] jury instructions." (Pet'r's Obj. at 5.) In essence, he is saying that closing argument should not be allowed to cure the failure of the court to give a more specific jury instruction. The short answer to this argument is that a more specific jury instruction is not required. The jury instruction given by the court, coupled with the examination of the witness by both counsel regarding petitioner's robbery charge and conviction, are all that was required.

Petitioner has cited to no authority that would require a court to give a specific jury instruction of the type he claims defense counsel should have sought. Accordingly, his claim of

5

ineffective assistance of counsel for failure to request such a jury instruction must fail. Cf. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

### B. Ground Two: Ineffective Assistance of Counsel for Failing to Object to Jury Instructions Regarding Petitioner's Possession of a Different Handgun of the Same Caliber as the Murder Weapon

Ground Two of the habeas petition seeks relief on the ground that counsel was ineffective for failing to object to jury instructions regarding the inferences the jury could draw from petitioner's possession—three months after Kemp's murder—of a different handgun of the same caliber as the murder weapon.

Evidence at trial showed that Kemp was struck in the head by a .45 caliber bullet, and that police recovered from the murder scene cartridge cases for six .45 caliber bullets. (Trial Tr. Mar. 31, 2003 at 135-42.) In August 2001—three months after Kemp's murder—petitioner, while being chased by the police in an unrelated matter, tossed a .45 caliber semi-automatic pistol out of his vehicle. (Id. at 43-46, 137-39.) Ballistics tests revealed, however, that the handgun recovered from petitioner was not the handgun used to kill Kemp. (Id. at 138-39, 146, 148.) At trial, the Commonwealth attempted to link petitioner to Kemp's murder by introducing evidence of the handgun that police recovered from petitioner three months after the murder. Commonwealth v. Broaster, 863 A.2d 588, 591 (Pa. Super. Ct. 2004).

In charging the jury, the court stated that the jury could consider evidence of petitioner's handgun only for the following limited purposes:

> You may consider the evidence regarding the defendant's alleged possession—
> alleged possible possession of a .45 caliber semi-automatic to assist you in
> determining the defendant's possible state of mind, knowledge, awareness and
> intent at the time of this incident as well as whether or not the defendant acted
> with malice in this case. You may also consider it to show the natural progression

6

of events, circumstances and/or as a part of a chain or sequence of events that may have surrounded the shooting itself. In other words, you may consider it as a part of a chain or sequence of events which formed the history of the case for which the defendant is currently being tried. You may also consider this as a piece of circumstantial evidence which may show that the defendant had access to and knowledge of and familiarity with particular types of guns; namely .45 caliber semi-automatic, which may show that the defendant had both the means and the ability to commit this killing and therefore, may be probative of the defendant's identity as the person who committed the crime.

(Trial Tr. Apr. 2, 2003 at 140-41.)

These jury instructions contain permissive inferences that "suggest[] . . . a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." Francis v. Franklin, 471 U.S. 307, 314 (1985). "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." Id. at 314-15; see County Court of Ulster County, New York v. Allen, 442 U.S. 140, 157 (1979).

Viewing these instructions as a whole, the Court concludes that they invited the jury to draw inferences clearly contrary to reason and common sense. The handgun found in petitioner's possession three months after the murder indisputably was not the murder weapon. It would be unreasonable to determine, based on petitioner's possession of a different .45 caliber semi-automatic pistol three months after the murder, his state of mind, knowledge, awareness, and intent—including whether he acted with malice—at the time Kemp was murdered. In addition, the mere fact that petitioner owned a handgun of the same caliber as the murder weapon does not—and cannot—"show the natural progression of events, circumstances and/or . . . a part of a chain or sequence of events that may have surrounded the shooting itself." Moreover, even if petitioner had knowledge of and familiarity with .45 caliber semi-automatic pistols in August 2001—three months after Kemp's murder—it would be unreasonable to infer,

7

from his mere possession of a handgun that was not the murder weapon, that he had access to, or the means and ability to use the same caliber handgun in May 2001, when Kemp was killed.

In so instructing the jury, the court in essence told them that possession of a different handgun of the same caliber as the murder weapon three months after the murder could be considered evidence of guilt. That simply is not so. Given defense counsel's failure to object to such patently unreasonable jury instructions, the Court concludes that his representation of petitioner "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984).

To prevail on a claim of ineffective assistance of counsel, however, petitioner must show not only that defense counsel's performance was deficient, but also that this deficient performance prejudiced his defense. Id. at 687. In other words, petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Petitioner has demonstrated a reasonable probability that, but for counsel's failure to object to the court's unreasonable jury instructions, the result of the proceeding would have been different. Aside from evidence of a different handgun of the same caliber as the murder weapon, found in petitioner's possession three months after Kemp's murder, the only other key evidence used to incriminate petitioner was the testimony of the eyewitness, Orlando O'Neal.[1] Given O'Neal's suspect motives for going to the police and identifying petitioner as Kemp's murderer,

---

[1] During a hearing on a motion in limine that was conducted before trial, the prosecutor argued: "[T]he Commonwealth's evidence in this case, your Honor, will more or less hinge on the testimony of one single eyewitness . . . That is it in this case. We have no other evidence to connect the defendant to this crime . . . ." (Trial Tr. Mar. 26, 2003 at 13.)

there is a reasonable probability that the jury was troubled about O'Neal's credibility, but nevertheless convicted petitioner based on that testimony coupled with (1) the evidence that petitioner possessed a different handgun of the same caliber as the murder weapon, and (2) the state court's improper jury instructions regarding that handgun.

This is not a case where the evidence against petitioner was overwhelming. In a case of overwhelming evidence of guilt, it might be argued that the erroneous jury charge on the gun issue might not be prejudicial. But that is not so in this case. In light of the egregious errors committed by the state court in its instructions to the jury about petitioner's handgun and the fact that the eyewitness had major credibility issues, the Court concludes that petitioner has successfully demonstrated prejudice as a result of ineffective assistance of counsel on this issue.

Petitioner raised the same claim of ineffective assistance of counsel in his petition for relief under the Pennsylvania Post Conviction Relief Act, 42 Pa. C.S.A. § 9541 et seq. On appeal, the Superior Court affirmed the trial court's denial of that claim, reasoning that the court's jury instructions did not include any mandatory inferences, and that the permissive inferences contained in the instructions were appropriate. Commonwealth v. Broaster, No. 2087 EDA 2008, slip op. at 8-11 (Pa. Super. Ct. Dec. 3, 2009). Having concluded that the jury instructions about petitioner's handgun were proper and that counsel therefore did not render deficient performance by failing to object to those instructions, the Superior Court did not reach the question of prejudice. Id. For the reasons stated above, the Court concludes that petitioner has demonstrated that "[t]he state court's application of clearly established law [was] objectively unreasonable," Lockyer v. Andrade, 538 U.S. 63, 75 (2003), and that "there was no reasonable basis for the state court to deny relief" as to petitioner's claim that counsel was ineffective for

failing to object to the court's jury instructions about petitioner's handgun. Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770, 784 (2011); see 28 U.S.C. § 2254(d)(1).

## IV. CONCLUSION

For all of the foregoing reasons, the Court approves in part and rejects in part the R & R of United States Magistrate Judge Carol Sandra Moore Wells dated February 25, 2011, as modified by this Memorandum; overrules in part and sustains in part petitioner's Objections to the R & R; and conditionally grants the petition for writ of habeas corpus. The Court conditionally grants the writ on the ground that counsel was ineffective for failing to object to the state court's jury instructions about petitioner's possession—three months after Kemp's murder—of a different handgun of the same caliber as the murder weapon (Ground Two).

The Court denies that part of the Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 which seeks relief on the ground that counsel was ineffective for failing to object to the lack of a jury instruction that would specifically address O'Neal's credibility in light of his pending robbery charge at the time he made inculpatory statements against petitioner (Ground One). Petitioner has withdrawn that part of the petition which seeks relief on the ground that trial counsel was ineffective for failing to object to the portion of the state court's concluding instructions which described petitioner's exercise of his Fifth Amendment right as a "failure" to testify (Ground Three), and that ground for relief will be marked withdrawn.

An appropriate order follows.